JUDGE ABRAMS

**14 CV 3138**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X  Case No.

SHERWIN CHERRY,

                          **COMPLAINT**

            Plaintiff,

-against-

THE NIELSEN COMPANY US, LLC, ROBERT BURNS,    **PLAINTIFF DEMANDS**
*Individually*, and ARCHANA M. RAMESH, *Individually*,    **A TRIAL BY JURY**

           Defendants.
------------------------------------------------------------X

RECEIVED
MAY -2 2014
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, SHERWIN CHERRY, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. §1981 and the New York State Human Rights Law, New York State Executive Law §290, *et. seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated Against** on the basis of his **Race (Black)** and then **Retaliated Against** and **Terminated** by his employer solely for complaining of discrimination.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as

the acts complained of occurred therein.

## PARTIES

5. That at all times relevant hereto, Plaintiff SHERWIN CHERRY ("CHERRY") was a resident of the State of Pennsylvania and the County of Lackawanna.

6. That at all times relevant hereto, Defendant THE NIELSEN COMPANY US, LLC ("NIELSEN") was a foreign limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its headquarters located at 85 Broad Street, New York, New York 10004.

7. That at all times relevant hereto, Plaintiff CHERRY was an employee of Defendant NIELSEN.

8. That at all times relevant hereto, Defendant ROBERT BURNS ("BURNS") was an employee of Defendant NIELSEN, holding the position of "Senior Human Resources Business Partner."

9. That at all times relevant hereto, Defendant BURNS was Plaintiff CHERRY's supervisor and had supervisory authority over Plaintiff CHERRY.

10. That at all times relevant hereto, Defendant ARCHANA M. RAMESH ("RAMESH") was an employee of Defendant NIELSEN, holding the position of "Senior Human Resource Business Partner."

11. That at all times relevant hereto, Defendant RAMESH was Plaintiff CHERRY's supervisor and had supervisory authority over Plaintiff CHERRY.

12. That at all times relevant hereto, Defendant NIELSEN, Defendant BURNS and Defendant RAMESH and are collectively referred to herein as "Defendants."

## MATERIAL FACTS

13. On or about August 12, 2013, Plaintiff CHERRY began working for Defendants as a "Field Service Representative – White Plains," earning approximately $44,400 per year plus quarterly incentives/bonuses.

14. At all times relevant hereto, Plaintiff CHERRY was an exemplary employee and always received compliments for his work performance.

15. However, beginning almost immediately, **Defendants consistently and continuously subjected Plaintiff CHERRY to discrimination and disparate treatment solely due to Plaintiff CHERRY's race (Black)**, creating an extremely hostile and intimidating work environment.

16. Even worse, Defendants then **retaliated against Plaintiff CHERRY** and terminated his employment solely for complaining about the racial discrimination.

17. By way of background, on or about August 25, 2013, Defendants instructed Plaintiff CHERRY to travel to Tampa, Florida to undergo training for his new position. The training was to last from on or about August 25, 2013 through on or about October 4, 2013.

18. However, during training, Plaintiff CHERRY immediately noticed that the instructor of the class, Gus Gray, was constantly treating Plaintiff CHERRY very differently and less favorably than Gus Gray treated all of the other new employees in the class.

19. While Plaintiff CHERRY was initially unsure as to why Gus Gray was treating him differently, it soon became apparent to Plaintiff CHERRY that Gus Gray was treating him in this fashion due to his race (Black), as **Plaintiff CHERRY was the only Black employee in the training class** and Gus Gray did not treat any of Plaintiff CHERRY's

3

similarly-situated non-Black coworkers the same way.

20. By way of example, while Gus Gray constantly offered to help and assist each of Plaintiff CHERRY's similarly-situated coworkers, Gus Gray routinely refused to provide any help and/or assistance to Plaintiff CHERRY.

21. For instance, in addition to the classroom portion of the training class, there was a hands-on laboratory portion during which the trainees were expected to correctly install the Nielsen components onto model televisions, gaming systems, VCRs, and DVD players. While Gus Gray routinely assisted each of Plaintiff CHERRY's similarly-situated non-Black coworkers to correctly install and wire the models, Gus Gray arbitrarily refused to provide Plaintiff CHERRY with any help at all, sometimes even refusing to acknowledge his existence.

22. In fact, because Gus Gray refused to answer any of Plaintiff CHERRY's questions, Plaintiff CHERRY was the only trainee in the class that was forced to seek help from his workers instead of the instructor.

23. As such, **on or about August 25, 2013, Plaintiff CHERRY complained to Rebecca Villega, Defendants' Human Resources Representative**, about the obvious discrimination and disparate treatment based solely on his race (Black). Unfortunately, Ms. Villega failed to take any action in response to Plaintiff CHERRY's complaint, allowing Gus Gray to continue treating Plaintiff CHERRY differently solely due to his race.

24. **In or about mid-September 2013, Plaintiff CHERRY complained directly to Defendant BURNS** that Gus Gray's racial discrimination was still occurring and was never put to an end. Rather shockingly, Defendant BURNS also failed to take any action

4

in response, and not unexpectedly, Gus Gray continued to deny Plaintiff CHERRY the proper help and assistance solely due to Plaintiff CHERRY's race.

25. Not knowing where to turn for help, **on or about October 2, 2013, Plaintiff CHERRY complained to Defendant RAMESH** about the continued racial discrimination. While Plaintiff CHERRY was hoping that this complaint would finally put an end to the unrelenting discrimination and disparate treatment, he never expected Defendants to actively retaliate against him. However, this is exactly what occurred.

26. The very next day, **on or about October 3, 3013**, without any warning, **Defendant RAMESH and Louis Rodriguez, Field Representative Manager, suddenly terminated Plaintiff CHERRY's employment because "you do not live in White Plains."**

27. On or about November 21, 2013, when Plaintiff CHERRY reached out to Defendant BURNS concerning the clearly retaliatory termination, Defendant BURNS responded that, "you were made fully aware that you must live in the market area in order to be hired for the Field Representative role. Both Joe Minervini and Louie Rodriguez indicated to me that the posting for the position clearly stated the requirement and during initial discussions with you, you led them to believe that you lived in the market area. Consequently, Louis offered you the position. It was not until the very end of your training that Louie learned that you did not live in the market area, and so he terminated your employment as a result. Had Louie known that you did not live in the market area prior to offering you the job, he would not have offered the role to you."

28. This reason for termination was clearly **pretextual**, as Defendants knew that Plaintiff CHERRY did not reside in White Plains at the time he was hired. Neither Louie

5


Rodriguez nor Joe Minervini ever mentioned anything to Plaintiff CHERRY that his residence in Pennsylvania would be an issue. In fact, Plaintiff CHERRY's paystubs that were provided to him by Defendants even list his address as 1511 West Locust Street, Scranton, PA 18504.

29. Furthermore, Defendants' job description for "Field Service Representative – White Plains" makes absolutely no mention of residency requirements anywhere within the document.

30. Lastly, upon information and belief, the individual that held Plaintiff CHERRY's position prior to Plaintiff CHERRY was living in Long Island and Defendants had no issues with that employee's residence outside of White Plains.

31. This termination was especially suspect because Plaintiff CHERRY was the one who was complaining that he was the victim of unrelenting discrimination, and he was also the one who was **terminated only one (1) day after he complained for the last time**.

32. **Based upon the aforementioned suspicious actions, it is clear that on or about October 3, 2013, Defendants terminated the employment of Plaintiff CHERRY solely due to his race and in retaliation for complaining of ongoing racial discrimination.**

33. Plaintiff CHERRY was physically repulsed and disgusted by this blatantly discriminatory and retaliatory termination.

34. Unfortunately, upon information and belief, no investigation ever took place and no appropriate or reasonable action was ever taken regarding Defendants' discrimination and disparate treatment of Plaintiff CHERRY due to his race.

35. Plaintiff CHERRY feels offended, disturbed, and humiliated by the blatantly unlawful,

discriminatory, and retaliatory termination.

36. Plaintiff CHERRY was retaliated against due to his objections to Defendants' discriminatory and unlawful conduct.

37. The above are just some of the acts of harassment, discrimination and retaliation that Plaintiff CHERRY experienced on a regular and continual basis while employed by Defendants.

38. Defendants treated Plaintiff CHERRY differently solely due to his race (Black).

39. But for the fact that Plaintiff CHERRY is Black, Defendants would not have treated him differently.

40. **But for the fact that Plaintiff CHERRY complained about Defendants' discrimination and disparate treatment, Defendants would not have terminated his employment.**

41. Defendants' actions were unsolicited, unwelcome and offensive.

42. Defendants' actions and conduct were intentional and intended to harm Plaintiff CHERRY.

43. **Plaintiff CHERRY's direct supervisor, Gus Gray, regularly exposed Plaintiff CHERRY to disparate treatment solely due to his race (Black).**

44. Plaintiff CHERRY has been unlawfully discriminated against, retaliated against, humiliated, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

45. Plaintiff CHERRY's performance was, upon information and belief, above average during the course of his employment with Defendants.

46. As a result of Defendants' actions, Plaintiff CHERRY feels extremely humiliated,

7

degraded, victimized, embarrassed, and emotionally distressed.

47. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff CHERRY, Plaintiff CHERRY has suffered severe emotional distress and physical ailments.

48. As a result of the acts and conduct complained of herein, Plaintiff CHERRY has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff CHERRY has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

49. As a result of the above, Plaintiff CHERRY has been damaged in an amount which exceeds the jurisdiction limits of the Court.

50. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff CHERRY demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. §1981

51. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

52. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

8

    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981

53. Plaintiff, who is Black, was discriminated against because of his race as provided under 42 U.S.C. §1981 and has suffered damages as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER 42 U.S.C. §1981

54. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

55. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

56. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

57. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex,

disability, predisposing genetic characteristics, marital status, or domestic violence victim status, ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

60. Defendants have engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his race.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

61. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

63. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

66. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

## JURY DEMAND

67. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.*, and the New York State Executive Law §290, *et. seq.*, in that Defendants discriminated against Plaintiff on the basis of his race and retaliated against Plaintiff for complaining of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       May 1, 2014

                                                                  PHILLIPS & ASSOCIATES,
                                                                  ATTORNEYS AT LAW, PLLC

By: _____/s/ Alex Umansky_____
      Alex Umansky, Esq.
      *Attorneys for Plaintiff*
      45 Broadway, Suite 620
      New York, New York 10006
      (212) 248-7431
      aumansky@tpglaws.com